## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

Judy Annette Henson as Administratix of
The Estate of David Wayne Henson
309 Gap View Blvd.,
Harpers Ferry, WV 25425

Plaintiff,

v.                                                          Civil Action No.: 2019-

Ameet Sharad Parikh, DO
20010 Century Blvd, Ste 200,
Germantown, MD 20874

    **Serve on:**
    Emergency Medicine Associates, P.A. P.C.
    CSC-Lawyers Incorporating Service
    7 St. Paul Street Suite 820
    Baltimore, MD 21202
and

Emergency Medicine Associates, P.A. P.C.
20010 Century Blvd, Ste 200,
Germantown, MD 20874

    **Serve on:**
    Emergency Medicine Associates, P.A. P.C.
    CSC-Lawyers Incorporating Service
    7 St. Paul Street Suite 820
    Baltimore, MD 21202

Defendants.

## COMPLAINT

Plaintiff Judy Anne Henson as Administratix of the Estate of David Wayne Henson, by and through her attorney, Stephen G. Skinner, and hereby sues the Defendants, Ameet Sharad Parikh, DO (hereinafter "Dr. Parikh") and Emergency Medicine Associates, P.A. P.C.

## JURISDICTION/VENUE

1. On or about November 6, 2019, a Statement of Claim (HCA No. 2019-520) alleging medical negligence, along with a Certificate of Qualified Expert and Expert Affidavit and Waiver of Health Claims Arbitration, were filed by Plaintiff Judy Annette Henson, Administratix of the Estate of David W. Henson with the Health Care Alternative Dispute Resolution Office ("HCADRO"). *See* Statement in Support of Claim, Certificate of Qualified Expert and Screening Certificate of Merit and Waiver of Health Claims Arbitration, attached as **Exhibit 1**.

2. HCADRO issued an Order of Transfer to the United States District Court on December 9, 2019. *See* Order of Transfer, attached as **Exhibit 2**.

3. The amount of this claim exceeds Thirty thousand Dollars ($30,000.00).

4. Jurisdiction is proper in the United States District Court for the District of Maryland under 28 U.S.C. § 1332, as this controversy involved a dispute between citizens of different states and the amount in controversy exceeds the jurisdictional requirement.

## PARTIES

5. Plaintiff, Judy Annette Henson as Administratix of the Estate of David W. Henson, is a resident of the State of West Virginia at 150 Whitehall Drive, Charles Town, WV 25414, Berkeley County, West Virginia.

6. All events giving rise to this claim took place in Jefferson County, West Virginia and Dr. Parikh at all times relevant hereto was employed in Montgomery County, Maryland.

7. Dr. Parikh is, and at all times herein relevant was, a physician licensed to practice medicine in Maryland and West Virginia.

8. Dr. Parikh owed a duty of care to provide medical care and treatment to David W. Henson in accordance with applicable standards of care.

9. At all relevant times, Dr. Parikh was an employee, agent, and/or representative of Emergency Medicine Associates, P.A. P.C.

10. Emergency Medicine Associates, P.A. P.C. is a business organized and existing under the laws of the State of Maryland with its principal place of business located at 20010 Century Blvd Ste 200, Germantown, Montgomery County, Maryland 20874.

11. Dr. Parikh represented to the public and to David W. Henson that he would provide experienced, highly skilled medical/emergency care, that he would provide any and all care and services that David W. Henson would need, and take these representations with the intent to further the trust of David. Henson.

12. At all times of which the Plaintiff complains, Dr. Parikh was acting individually and as the real, apparent and/or ostensible agent, and/or servant and/or employee of Emergency Medicine Associates, P.A. P.C.

## **FACTS COMMON TO ALL COUNTS**

13. Plaintiff incorporates in this Count those facts set forth in paragraphs 1 through 12, hereinabove, including subparagraphs, by reference thereto, as if fully set forth herein.

14. Mr. Henson was 72 at the time of the events surrounding this case.

15. David W. Henson presented to the ED at Jefferson Medical Center on 1/22/17 at 9:19 a.m. via ambulance following a fall at home the day before. Following triage, Mr. Henson was treated by Ameet Sharad Parikh, DO during this ED visit. Dr. Parikh noted that Mr. Henson fell while walking and that he landed on carpet. He notes that the point of impact was the left hip and head. He further noted that Mr. Henson has pain in the head and left hip. Dr. Parikh notes that Mr. Henson was ambulatory at the scene. Pertinent negatives include, no fever, no numbness, no abdominal pain, no nausea, no vomiting, and no loss of consciousness.

16. Also documented is: 72 y/O MALE ESCORTED TO ED BY EMS AFTER A FALL. THE PT REPORTS THAT HE HAD AN ONSET OF DIZZINESS WHILE WALKING TO HIS BEDROOM YESTERDAY EVENING AND FELL. THE PT STS THAT HE FELL ONTO HIS LEFT SIDE AND STRUCK HIS HEAD ON THE FLOOR. DENIES ANY LOC, NECK PAIN, OR NUMBNESS. THE PT STS THAT HE HAS HAD LEFT HIP PAIN SINCE THE FALL AND HAS HAD DIFFICULTY AMBULATING DUE TO HIS PAIN. PT DENIES ANY HEADACHE, CHEST PAIN, OR SHORTNESS OF BREATH PRIOR TO FALLING LAST NIGHT. PT STS THAT HE HAS CONTINUED TO FEEL DIZZY INTERMITTENTLY AND HAS BEEN FEELING GENERALLY WEAK THIS MORNING. THE PT REPORTS THAT HE IS CURRENTLY ON BLOOD THINNERS.

17. Prior medical history was positive for atrial fibrillation; heart valve disorder with valve replacement; CABG.

18. Pertinent medications that Mr. Henson was on at the time of his presentation to the ED include Plavix 75 mg per day; Warfarin (Coumadin) 4 mg per day; aspirin 81 mg per day; and, Doxycycline 100 mg 2 x per day.

19. On physical examination, it is noted that Mr. Henson had a scabbed laceration on the posterior scalp with no active bleeding. Left hip pain to palpation. Alert, awake, and appropriate, normal speech and sensation.

20. Medications administered during Mr. Henson's ED visit include Morphine 4mg/mL (2 mg intravenous given 1/22/17 1003); fentanyl 50 mcg/mL injection (50 mcg Intravenous given 1/22/17 1045).

3

21. Blood work demonstrated RBC 3.92 (L); HGB 13.1 (L); PT 40.9 (H); and INR 3.79

22. Diagnostic testing included x-rays of left hip and pelvis; CXR; and CT of brain WO IV contrast.

23. CXR was normal. CT of brain findings were consistent with chronic micro vascular ischemic changes, no evidence of acute intracranial hemorrhage, mass, or midline shift. The left hip X-ray showed osteoarthritic degenerative changes, no evidence of acute fracture or dislocation. Mr. Henson also underwent an EKG which demonstrated A-fib.

24. At 11:37 a.m., Dr. Parikh notes that "On reevaluation the patient reports that he is feeling better after receiving pain medication. Discussed results with the patient and his family and answered questions to satisfaction. The patient is stable for discharge and the patient's family is comfortable with taking him home."

25. Mr. Henson was discharged in what was noted as stable condition. His discharge diagnoses were closed head injury; contusion of left hip; and, A-fib. Mr. Henson was discharged with Percocet 5-325 for pain.

26. Mr. Henson presented to Berkeley Medical Center ED on 1/23/17, reporting that he could not weight bear on his legs. According to documentation from that encounter, Mr. Henson left the ED without being seen after triage. However, the documentation for that encounter does not include vital signs or review of any systems, which would be part of the standard of care for triage. There is also lack of any documentation that any level of patient acuity was determined by triage and/or that appropriate patient/family counseling was done with respect to what the emergency condition might be and/or what could happen to Mr. Henson if he was not seen by an emergency physician.

27. Mr. Henson presented again to the Jefferson Medical Center via ambulance on 1/24/17 at approximately 13:21. He was treated on this occasion by emergency medicine physician Benjamin Chacko, M.D. Upon arrival, Mr. Henson was reported to be having altered mental status at home. He was noted to be A&O x2, to person and place, upon arrival to the ED. Upon physical examination, there was a hematoma along Mr. Henson's left flank measuring more than one (1) foot long. A CT of the abdomen/pelvis demonstrated a large, ill-defined, likely left gluteus maximus muscle hematoma and a large piriformis muscle hematoma. Mr. Henson's INR was 9.07; PT 99.6; HGB 7.4; and, RBC 2.23 – all of which were significantly abnormal and evidenced that Mr. Henson was hemodynamically unstable as would be consistent with bleeding, that is, the hematoma found on physical examination and by CT.

28. Mr. Henson received 4 units of FFP (fresh frozen plasma) and 2 units of PRBC's (packed red blood cells). Due to the emergent condition of Mr. Henson upon arrival and the necessity to transfuse him rapidly, he became fluid overloaded and developed pulmonary edema. Ultimately, Mr. Henson was transferred to INOVA in Fairfax, Virginia, for continued treatment

of his critical condition. Unfortunately, Mr. Henson's condition continued to deteriorate and he died on 2/2/17 from complications of pulmonary edema.

29.     In summary, David W. Henson presented to Jefferson Medical Center on 1/21/2017, after falling at home and with severe hip/leg pain; difficulty ambulating; on 3 anti-coagulation medications, as well as an antibiotic, which, in combination, effect coagulopathy; and, borderline anemia with abnormal PT and INR. This was highly suggestive of either bleeding/developing hematoma or the likelihood that bleeding/hematoma would develop over the next 24-48 hours. This scenario went unappreciated by the treating emergency physician, Dr. Parikh. Because these signs/symptoms were not appreciated, Mr. Henson was discharged home instead of being admitted for observation/monitoring, such that when Mr. Henson returned to Jefferson Medical Center on 1/24/17, his condition was so emergent that he required rapid and aggressive treatment that placed him at significant risk for pulmonary edema. Mr. Henson developed pulmonary edema as a proximate result of the rapid and aggressive treatment (transfusions), which proximately caused his death on 2/2/17.

## **MEDICAL NEGLIGENCE**

30.     Plaintiff incorporates in this Count those facts set forth in paragraphs 1 through 29, hereinabove, including subparagraphs, by reference thereto, as if fully set forth herein.

31.     Dr. Parikh owed to the public at large and to Plaintiff, a duty to use that degree of skill and care typically exercised by health care practitioners in the same specialty with like training and experience in the same or similar circumstances.

32.     Plaintiff alleges that Dr. Parikh owed to Mr. Henson the duty to exercise reasonable care, skill and judgment expected of a competent health care provider acting in the same or similar circumstances, which duty included, but not limited to, the recognition for patients who present following a fall and who are on Plavix; Warfarin (Coumadin); aspirin; and, Doxycycline (antibiotic) and who exhibit signs/symptoms of bleeding/hematoma such as anemia and/or visual hematoma and develop the need for management of those conditions, including the risk of pulmonary edema if/when rapid transfusion becomes necessary, all of which Dr. Parikh failed to do.

33.     Dr. Parikh was negligent in his care and treatment of David W. Henson, by breaching the standard of care in the following ways:

The applicable emergency medicine standards of care for a patient that presents with a fall such as that described by Mr. Henson (points of contact head and left hip) and who is on anti-coagulation medications (Plavix, Warfarin, and aspirin) and doxycycline (antibiotic) (which medications, in

combination, effect coagulopathy) and who is reporting difficulty with ambulation and significant pain, required Dr. Parikh to do the following:

    a)    to perform an adequate physical examination of Mr. Henson, specifically to include visualization of the left hip area to check for hematoma;

    b)    to order a CT scan of the pelvis/left hip area – an x-ray will not show any micro fractures and/or a developing hematoma;

    c)    to consult with neurology to ensure that Mr. Henson underwent a MRI of the brain;

    d)    to appreciate not only how anti-coagulant drugs, but also how antibiotics, in combination, effect coagulation in a patient who suffers a trauma;

    e)    to recognize that on 1/22/17 Mr. Henson already had abnormal coagulopathy and was borderline anemic (suggesting bleeding);

    f)    to admit Mr. Henson for ongoing observation/monitoring/treatment;

    g)    to specifically advise Mr. Henson and his family of the potential for developing/worsening bleeding and the hemodynamic crises that may result from such and the specific signs/symptoms to watch for relating to such.

    34.    At all times relating to this claim, Dr. Parikh represented to David W. Henson and the public that he possessed the degree of skill, knowledge and ability possessed by reasonably competent medical practitioners, practicing under the same or similar circumstances and those involving the David W. Henson.

    35.    The Plaintiff alleges that Dr. Parikh, including his duly authorized agents and/or employees, owed to David W. Henson the duty to exercise reasonable care, skill and judgment expected of a competent medical practitioner acting in the same or similar circumstances.

    36.    This duty included the performance of adequate and proper diagnostic tests and procedures to determine the nature and severity of David W. Henson's condition, careful diagnosis of such condition, employment of appropriate procedures, surgery and/or treatment to correct such conditions without injury upon the David W. Henson, continuous evaluation of David W. Henson's condition and the effects of such treatment , and adjustment of the course of treatment in response to such ongoing surveillance and evaluation, all of which Dr. Parikh failed to do.

    37.    The breaches of the applicable medical standard of care by Dr. Parikh, as set out above, caused the death of Mr. Henson on 02/02/2017. Dr. Parikh's failure to provide care pursuant to acceptable emergency medical standards of care, as set forth above, was a direct and proximate cause of Mr. Henson's death on 02/02/2017. A timely recognition of bleeding/developing hematoma and/or the likelihood that bleeding/hematoma would develop and admitting Mr. Henson for ongoing observation/monitoring/treatment of such, would have, to a

reasonable degree of medical probability, prevented the death of Mr. Henson. More specifically, had Mr. Henson been admitted on 01/22/2017, his labs would have been monitored closely and in an ongoing manner; his left hip, pain, mental status, and other vitals would have been observed and monitored closely and in an ongoing manner, such that his bleeding/hematoma and worsening hemodynamic instability would have been recognized and diagnosed timely. Had Mr. Henson's bleeding/hematoma and worsening hemodynamic instability been diagnosed timely, the necessary interventions (transfusions) would have been administered over a longer period of time rather than in the rapid and aggressive manner required here due to Mr. Henson's emergent/urgent condition on 01/24/2017, thereby significantly reducing or even eliminating the risk of pulmonary edema.

38. The above breaches of the applicable medical standards of care by Dr. Parikh, as set out above, also set the stage for Mr. Henson and his family not appreciating the ongoing risk of bleeding/hematoma and the hemodynamic instability/crisis that could result therefrom. Specifically, when Mr. Henson presented to the ED at Berkeley Medical Center, he and/or his family complained of him being unable to weight bear on his legs. Neither Mr. Henson nor his family reported concern over a hematoma or potential bleeding as they had not been counseled by Dr. Parikh to be concerned about such.

39. If Dr. Parikh had not breached the applicable emergency medicine standards of care, as set out above, Mr. Henson's bleeding/developing hematoma and worsening hemodynamic instability would have been diagnosed in a timely manner. Additionally, Mr. Henson would have received the necessary medical intervention in a timely and safer manner, and, to a reasonable degree of medical probability, would have had a greater than 80% chance for a successful therapeutic outcome and would have survived.

WHEREFORE, Plaintiff respectfully demands judgment against the named Defendants, including any actual and/or apparent agents, independent contractors, servants and/or employees jointly and severally, for actual, general, special, and compensatory damages as a consequence of the negligence of the named Defendants in an amount exceeding Thirty Thousand Dollars ($30,000.00), exclusive of interests and costs, and any other legal or equitable relief as justice requires.

Respectfully submitted,

**/s/ Stephen G. Skinner**

Stephen G. Skinner
Bar ID: 20220
Client Funding #:1706090005
SKINNER LAW FIRM
PO BOX 487
Charles Town, WV 25414
304-725-7029
sskinner@skinnerfirm.com
*Attorney for the Plaintiff*