IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

**Judy Anne Henson as**
**Administratrix of The Estate**
**of David Wayne Henson**

    **Plaintiff,**

v.                                                    Civil Action No.: 8:20-cv-00062

**Ameet Sharad Parikh, DO**
**and Emergency Medicine**
**Associates, P.A.**

    **Defendants.**

**RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Plaintiff Judy Anne Henson, as Administratrix of the Estate of David Wayne Henson, responds in opposition to Defendants Ameet Sharad Parikh, DO's and Emergency Medicine Associates, P.A.'s Motion to Dismiss for Failure to File Suit Within the Applicable Statutory Time Period.

Dr. Parikh, who contracts through Maryland-based Emergency Medicine Associates, P.A. to work as an emergency room doctor in a West Virginia hospital, failed to appropriately diagnose and treat David Henson for internal bleeding while Mr. Henson was a patient at Jefferson Medical Center in West Virginia. The emergency treatment Mr. Henson required two days after Dr. Parikh's negligent diagnosis caused pulmonary edema.

The Defendants' Motion to Dismiss shows a myopic view of the pleadings. Although Mr. Henson suffered for eleven days before his death, and although the

1

Defendants' acts and omissions deprived Mr. Henson of an 80% chance of recovery, the Defendants characterize the Complaint as presenting only one cause of action - wrongful death. The Complaint in this case does not contain a single use of the phrase "wrongful death" because it is not a wrongful death case. Instead, the Plaintiff brings a survival action for medical malpractice seeking damages for Mr. Henson's pain and suffering, medical expenses, and loss of chance of survival. Plaintiff's survival action for damages resulting to her husband from medical malpractice, including a claim for loss of chance, survive Mr. Henson's death and are appropriately brought by his Administratrix in this action within the applicable statutory period of limitation. This case is not appropriate for dismissal.

## SUMMARY OF THE CASE

On the morning of January 22, 2017, 72 year-old David Henson fell at his home.[1] Mr. Henson landed hard on his left side, striking his left hip and his head on the floor.[2] Mr. Henson's fall was severe enough to warrant a trip by ambulance to the emergency room at Jefferson Medical Center.[3]

At the time of his arrival at the emergency room, Mr. Henson was having trouble walking due to his hip pain, and he reported feeling dizzy.[4] Defendant Ameet Sharad Parikh, DO examined Mr. Henson and his hip.[5] Mr. Henson told Dr. Parikh that he had a history of atrial fibrillation and had had a heart valve disorder requiring a valve

---

[1] Complaint, ¶¶ 15-16.
[2] Id.
[3] Id., ¶ 16.
[4] Id.
[5] Id., ¶ 19.

replacement[6] for which he took **three** blood thinner medications, including Plavix, Warfarin (Coumadin), aspirin, and Doxycycline.[7]

Lab tests performed at Dr. Parikh's direction showed that Mr. Henson had abnormal coagulopathy and borderline anemia, a combination highly suggestive of emergent, ongoing bleeding.[8] However, Dr. Parikh failed to appreciate the potential danger of excessive bleeding following trauma in a patient taking multiple anti-coagulant medications in combination with an antibiotic,[9] and he failed to order appropriate testing to determine the presence of micro-fractures or a developing hematoma.[10] At a minimum, Mr. Henson should have been admitted for observation and monitoring of his condition.[11]

But, Dr. Parikh simply discharged Mr. Henson with pain medication and diagnoses of a closed head injury, a contusion of his left hip, and atrial fibrillation.[12]

Mr. Henson returned to the emergency room via ambulance just two days later, on January 24, 2017.[13] He showed an altered and diminished mental status from his emergency room visit just two days prior.[14] On physical examination, Mr. Henson was found to have developed a severe left flank hematoma over afoot long, and testing revealed ongoing internal bleeding into the hematoma.[15]

---

[6] *Id.*, ¶ 17.
[7] *Id.*, ¶¶ 16-17.
[8] *Id.*, ¶ 33(e).
[9] *Id.*, ¶ 33(d).
[10] *Id.*, ¶ 33(b).
[11] *Id.*, ¶ 29.
[12] *Id.*, ¶ 25.
[13] *Id.*, ¶ 27.
[14] *Id.*
[15] *Id.*

Mr. Henson's condition was dire, and he required rapid transfusion.[16] Unfortunately, the transfusions caused Mr. Henson to become overloaded with fluid, and he developed pulmonary edema.[17] Ten days later, Mr. Henson died.[18] Had the Defendants treated Mr. Henson appropriately for internal bleeding when he first came to the emergency room after his fall, he would have had an 80% chance of recovery.

On January 15, 2019, Plaintiff filed a Notice of Intent to Provide a Screening Certificate of Merit/Notice of Claim in compliance with the West Virginia Medical Professional Liability Act ("MPLA"), W. Va. Code § 55-7B-6(b) and (d).[19] Plaintiff sent the Notice by certified mail to the West Virginia Attorney General, West Virginia University Hospitals, Jefferson Medical Center, and the West Virginia University Board of Governors.[20] The certified mail return receipts showed that the addressees received the Notice prior to January 22, 2019.[21] After January 22, 2019, Plaintiff learned that Dr. Parikh was not employed by Jefferson Medical Center or West Virginia University Hospitals, but by Defendant Emergency Medicine Associates, P.A., a Maryland entity. Thereafter, on March 20, 2019, Plaintiff provided the screening certificate of merit as required and included Emergency Medicine Associates as a recipient.[22]

---

[16] *Id.*, ¶ 28.
[17] *Id.*
[18] *Id.*
[19] See Exhibit A, correspondence from Kelly R. Reed, PLLC dated January 15, 2019. W. Va. Code § 55-7B-6(d) allows for filing of a Notice where a plaintiff has "insufficient time to obtain a screening certificate of merit prior to the expiration of the applicable statute of limitations," so long as the screening certificate of merit follows within sixty days.
[20] *Id.*
[21] Exhibit B, certified mail receipts for January 15, 2019 letter
[22] Exhibit C, correspondence from Kelly Reed, PLLC dated March 30, 2019.

On November 5, 2019, Plaintiff complied with Md. Code Cts. & Jud. Proc. by filing a Statement of Claim, Certificate of Qualified Expert and Expert Affidavit, Waiver of Health Claims Arbitration, and Personal Information Certification with the Maryland Health Care Alternative Dispute Resolution Office.[23]

## STANDARD OF JUDGEMENT

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* If a complaint alleges sufficient facts to make a claim merely plausible, it must survive a Rule 12(b)(6) motion to dismiss even if it appears that recovery is unlikely. *Miele v. Perlstein,* 243 Fed.Appx. 232 (9th Cir. 2007).

Importantly, even after *Iqbal* and *Twombly,* "[t]he Federal Rules of Civil Procedure remain committed to a **notice-pleading** standard that was adopted when the Rules were first promulgated in 1938." *Sansotta v. Town of Nags Head,* 724 F.3d 533, 548 (4th Cir. 2013) (*citing Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 512 (2002) (emphasis added)). Those cases merely expanded on the idea of notice by requiring a court to consider the "plausibility" of pleadings.

---

[23] Plaintiff filed those documents with the Complaint.

5

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than the sheer possibility that a defendant has acted unlawfully.

*Iqbal,* 129 S. Ct. at 1949 (citations omitted).

## ARGUMENT

The Defendants' entire argument is that this Court should dismiss this case because Plaintiff filed it outside of the two-year statute of limitations applicable to West Virginia's wrongful death statute, W. Va. Code § 55-7-6. That argument is flawed by a narrow reading of the Complaint and overlooks the existence of a survival action on behalf of Mr. Henson. Litigation of that survival action in this Court requires application of the substantive rules regarding the locus of the injury, West Virginia, and the procedural rules of the forum state, Maryland.

### I.  Summary of the applicable choice of law rules

The general rule is that a federal court sitting in diversity "must apply the substantive law of the state in which it sits, including that state's choice-of-law principles." *Lewis v. Waletzky,* 31 A.3d 123, 129 (Md. 2010) (citing *Lab Corp. of Am. v. Hood,* 911 A.2d 841, 844 (Md. 2006)). Therefore, this Court, like Maryland state courts, follows the doctrine of *lex loci delecti* and applies the substantive law of the place of injury. *Id.* (citing *Hood,* 911 A.2d at 845; *White v. King,* 223 A.2d 763, 765 (1966)). However, a court sitting in diversity determines procedural law according to the law of the forum. *Id.,* at 130 (citing *Erie Ins. Exch. v. Heffernan,* 925 A.2d 636, 656 (2007); *Hood,* 911 A.2d at 845. Choice-of-law rules mandate a threshold determination

of whether a given law is substantive or procedural. *Id.* (citing *Heffernan,* 925 A.2d at 646.

Generally speaking, courts consider a statute of limitation procedural. *Georgetown College v. Madden,* 500 F. Supp. 557 (D. Md. 1980) (citing *Doughty v. Prettyman,* 148 A.2d 438 (Md. 1959)). "However, when the statute of limitations bars the right and not merely the remedy, an exception to the general rule applies and the statute of limitations is considered substantive." *Georgetown College,* 500 F. Supp. at 571. The characterization a state court would give a statute, substantive or procedural, binds the federal district court. *Id.*

**II. The case presented in the Complaint is a survival action for medical malpractice, not a wrongful death claim, and the limitations period is a procedural consideration.**

**A. The nature of a survival action.**

A survival statute allows the personal representative of an estate to pursue claims on behalf of a decedent that that decedent could have prosecuted but for his or her death. Both Maryland and West Virginia recognize the viability of a survival action. Md. Code Est. & Trusts § 6-402, W. Va. Code §§ 55-7-8 and 55-6-8a.

In Maryland, with the exception of slander, "a cause of action at law, whether real, personal, or mixed, survives the death of either party." Md. Code Est. & Trusts § 6-402; *see also* Md. Code Est. & Trusts § 7-401(y)(1) ("A personal representative may prosecute, defend, or submit to arbitration actions, claims, or proceedings in any appropriate jurisdiction for the protection or benefit of the estate, including the commencement of a personal action which the decedent might have commenced or

prosecuted."). The applicable West Virginia law is similar. "In addition to the causes of action which survive at common law, causes of action for injuries to property, real or personal, or injuries to the person and not resulting in death, or for deceit or fraud, also shall survive, and such actions may be brought notwithstanding the death of the person entitled to recover . . ." W. Va. Code § 55-7-8a(a).[24]

In this case, the underlying action is a medical malpractice action that the Plaintiff brings on behalf of her husband. In a medical malpractice claim, the statute of limitations is a procedural, not substantive consideration. Although closely related, a survival action and a wrongful death action are distinct claims. *See Dowling v. A.R.T. Inst. of Wash. Inc.,* 372 F. Supp. 3d 274, 288-89 (Md. 2019) (citing Md. Code Est. & Trusts § 7-401(y)(1) (survivorship); Md. Code Cts. & Jud. Proc. § 3-904 (wrongful death); *Carter v. Wallace & Gale Asbestos Settlement Tr.,* 96 A.3d 147 (2014)). The statute governing survival actions does not create a new cause of action, rather, it changes the common law rule of abatement. *See Trimper v. Porter-Hayden,* 501 A.2d 446, 450 (Md. 1985) ("The survival statute, unlike the wrongful death act, does not create a new cause of action unknown to common law.")

Moreover, recognizing that the existence of two distinct causes of action might arise from the same negligent act, Maryland law guards against double recovery by limiting damages in a survival action on behalf of a decedent to "damages the decedent

---

[24]In West Virginia, this language has been interpreted to mean that where an injury causes death, only a wrongful death claim survives. *See Mack-Evans v. Hilltop Health,* 700 S.E.2d 317, 321 n. 7 (W. Va. 2010). However, the issue of whether injuries sustained are different from those causing death is an issue of fact, and one not addressed by the Defendants in this case. *See id.* Here, construing the facts in the light most favorable to the Plaintiff, that issue remains unresolved.

could have recovered himself, had he survived and brought the action. Also, 'the damages are limited to compensation for pain and suffering endured by the deceased, his lost time, [his funeral expenses,] and his expenses between the time of his injury and his death.'" *Smallwood v. Bradford,* 720 A.2d 586, 594-95 (Md. 1997) (quoting *Stewart,* 65 A. at 53)); *see also Jones,* 702 A.2d at 443. Thus, by applying Maryland survival action law in this case, the Court does not allow the Plaintiff to do an end run around West Virginia's wrongful death limitations period. Instead, it allows the Plaintiff to pursue a separate, distinct cause of action for the medical malpractice that proximately caused damage to Mr. Henson during his lifetime.

    **B.    The procedural aspects of Maryland's medical malpractice laws govern this action, and Plaintiff has complied with the applicable limitations period.**

The analysis of which statute of limitations governs this medical malpractice action begins with the principle that the statute of limitations is determined by the procedural law of the forum state, unless the locus state characterizes the applicable limitations periods as substantive. *See Georgetown College,* 500 F. Supp. at 571.

Neither West Virginia nor Maryland's survival statute contains a statute of limitations. The West Virginia survival statute states only, "[n]othing contained in this section shall be construed to extend the time within which an action for any other tort shall be brought . . ." W. Va. Code § 55-7-8a(f). Thus, by the terms of the statute, a statute of limitations for a survival action must be derived from the underlying cause of action. Likewise, the Maryland statute does not contain a separate statute of limitations, so the limitation period derives from the underlying action. *See, Trimper v. Porter-*

*Hayden,* 501 A.2d 446, 450 (Md. 1985) (stating that the general three-year limitation of Md. Code Cts. & Jud. Proc. § 5-101 applied to the survival claim). Therefore, the Court must look to medical malpractice law for a statute of limitations.

Under West Virginia law, medical malpractice claims are governed by the Medical Professional Liability Act. ("MPLA"), W. Va. Code 55-7B-1 *et seq*. However, in contrast to the wrongful death act, the MPLA does not create a cause of action. Instead, it adds procedural requirements to the common law. *See* W. Va. Code 55-7B-1. The MPLA explicitly states:

> . . . the Legislature has determined that reforms in the common law and statutory rights of our citizens must be enacted together as necessary and mutual ingredients of the appropriate legislative response relating to:
>
> (1) Compensation for injury and death;
> (2) The regulation of rate making and other practices by the liability insurance industry, including the formation of a physicians' mutual insurance company and establishment of a fund to assure adequate compensation to victims of malpractice; and
> (3) The authority of medical licensing boards to effectively regulate and discipline the health care providers on such a board.

W. Va. Code 55-7B-1. Because a cause of action is, at essence, a negligence action existing at common law, the two year limitations period of the MPLA[25] is most accurately characterized as procedural.

Because the MPLA limitations period is procedural, the Court should look to Maryland's medical malpractice law for the statute of limitations in this case. In

---

[25] The limitations period prescribed by the MPLA is 2 years. W. Va. Code 55-7B-4(a). The Plaintiff has found nothing in the statute or in case law stating that the two year requirement is a condition precedent to the existence of a claim for medical malpractice.

10

Maryland, the Health Care Malpractice Claims Act ("HCMCA"), Md. Code Cts. & Jud. Proc. § 3-2A-01 *et seq.*, governs medical malpractice claims. The statute of limitations for medical malpractice is three years from the date a plaintiff discovers the injury:

> An action for damages for an injury arising out of the rendering of or failure to render professional services by a health care provider . . . shall be filed within the earlier of:
>
> (1) Five years of the time the injury was committed; or
> (2) Three years of the date the injury was discovered.

Md. Code Cts. & Jud. Proc. § 5-109.

Importantly, Maryland specifically characterizes the provisions of the HCMCA as procedural:

> Except as otherwise provided in Sections 3-2A-08A and 3-2A-09 of this subtitle, the provisions of this subtitle shall be deemed procedural in nature and may not be construed to create, enlarge, or diminish any cause of action not heretofore existing, except the defense of failure to comply with the procedures required under this subtitle.

Md. Code Cts. & Jud. Proc. § 2-2A-10.

Dr. Parikh misdiagnosed and inappropriately treated Mr. Henson on January 22, 2017. Thus, the underlying medical malpractice action accrued, at the earliest, on January 22, 2017. The statute of limitations under § 5-109 allowed Plaintiff until January 22, 2020, to file this action. In accordance with the requirements of Md. Code Cts. & Jud. Proc. § 2-2A-4(b), on November 6, 2019, the Plaintiff filed a Statement of Claim alleging medical negligence, as well as a Certificate of Qualified Expert and

Expert Affidavit with HCADRO.[26] Plaintiff filed the Complaint on January 9, 2020. Each of these filings occurred within the applicable limitations period.

> C. **The substantive aspects of West Virginia's medical malpractice law govern this action, and Plaintiff states a plausible case for recovery under those laws.**

Dr. Parikh misdiagnosed and improperly treated Mr. Henson in the emergency room of Jefferson Medical Center in Ranson, West Virginia. Therefore, the medical malpractice giving rise to this Complaint occurred in West Virginia, and the substantive law of West Virginia applies to the claims at issue.

The Complaint makes a plausible claim for medical malpractice under the applicable substantive law of West Virginia's Medical Professional Liability Act ("MPLA"), W. Va. Code 55-7B-1 *et seq*.

> In West Virginia, the standard of medical care is a national one. Syl. Pt. 1, *Paintiff v. City of Parkersburg*, 176 W. Va. 469, 345 S.E.2d 564 (W. Va. 1986). That standard imposes a duty on a physician to render reasonable and ordinary care in the diagnosis and treatment of a patient. Syl. Pt. 3, *Utter v. United Hosp. Ctr., Inc.*, 160 W. Va. 703, 236 S.E.2d 213 (W. Va. 1977). A deviation from this duty is malpractice. *See Mays*, 579 S.E.2d at 565.

*Bunner v. United States,* 2016 U.S. Dist. LEXIS 42463, 16 (S.D. W. Va. March 30, 2016).

---

[26] Complaint, ¶ 1.
To further underscore the procedural character of the HCMCA, courts hold even provisions considered condition precedent to litigation of a medical malpractice case to be procedural. In *Lewis v. Walensky,* even though the HCMCA specifies its character as procedural, the 4th Circuit Court of Appeals certified to Maryland Supreme Court the question of whether the certificate of merit requirement of Md. Code Cts. & Jud. Proc. § 2-2A-4 was substantive or procedural. *Lewis,* 31 A.2d at 125. The Maryland state court stated that "the administrative filing requirements are a condition precedent to initiating suit in Maryland state courts and federal courts located in Maryland. *Lewis,* 31 A.2d at 125. Regardless, the court held that the filing of a screening certificate of merit qualified as a procedural rather than substantive law. *Lewis,* 31 A.2d at 134.

Regarding damages, West Virginia recognizes a "loss of chance" theory. W. Va. Code 55-7B-2(b).

> If the plaintiff proceeds on the "loss of chance" theory, i.e., that the health care provider's failure to follow the accepted standard of care deprived the patient of a chance of recovery or increased the risk of harm to the patient which was a substantial factor in bringing about the ultimate injury to the patient, the plaintiff must also prove, to a reasonable degree of medical probability, that following the accepted standard of care would have resulted in a greater than twenty-five percent chance that the patient would have had an improved recovery or would have survived.

W. Va. Code § 55-7B-2(b).

Here, the Complaint makes a plausible case that Dr. Parikh's medical negligence deprived Mr. Henson of an 80% chance of surviving after his fall. The Complaint alleges all elements required to make a plausible claim for medical malpractice under West Virginia law, which states:

> (a) The following are necessary elements of proof that an injury or death resulted from the failure of a health care provider to follow the accepted standard of care:
> (1) The health care provider failed to exercise that degree of care, skill and learning required or expected of a reasonable, prudent health care provider in the profession or class to which the health care provider belongs, acting in the same or similar circumstances; and
> (2) Such failure was a proximate cause of the injury of death.

W. Va. Code § 55-7B-3.

First, the Complaint states that Dr. Parikh owed Mr. Henson the "duty to use that degree of skill and care typically exercised by health care practitioners in the same

13

specialty with like training and experience in the same or similar circumstances.[27] Then, the Complaint specifies the way in which Dr. Parikh breached that duty:

> Dr. Parikh was negligent in his care and treatment of David W. Henson, by breaching the standard of care in the following ways:
>
> The applicable emergency medicine standards of care for a patient that presents with a fall such as that described by Mr. Henson (points of contact head and left hip) and who is on anti-coagulation medications (Plavix, Warfarin, and aspirin) and doxycycline (antibiotic) (which medications, in combination, effect [sic] coagulopathy) and who is reporting difficulty with ambulation and significant pain, required Dr. Parikh to do the following:
> a) to perform an adequate physical examination of Mr. Henson, specifically to include visualization of the left hip area to check for hematoma;
> b) to order a CT scan of the pelvis/left hip area - an x-ray will not show any micro fractures and/or a developing hematoma;
> c) to consult with neurology to ensure that Mr. Henson underwent a MRI of the brain;
> d) to appreciate not only how anti-coagulant drugs, but also how antibiotics, in combination, effect [sic] coagulation in a patient who suffers a trauma;
> e) to recognize that on 1/22/17 Mr. Henson already had abnormal coagulopathy and was borderline anemic (suggesting bleeding);
> f) to admit Mr. Henson for ongoing observation/monitoring/treatment;
> g) to specifically advise Mr. Henson and his family of the potential for developing/worsening bleeding and the hemodynamic crises that may result from such and the specific signs/symptoms to watch for relating to such.[28]

The Complaint further explains how Dr. Parikh's multiple breaches of the standard of care proximately caused injury to Mr. Henson:

> If Dr. Parikh had not breached the applicable emergency medicine standards of care, as set out above, Mr. Henson's bleeding/developing hematoma and worsening hemodynamic instability would have been diagnosed in a timely manner. Additionally, Mr. Henson would have received the necessary medical intervention in a timely and safer manner, and, to a reasonable degree of medical

---

[27] Complaint ¶ 31.
[28] Complaint ¶ 33.

14

probability, would have had a greater than 80% chance for a successful therapeutic outcome and would have survived.[29]

On Mr. Henson's behalf, and on the behalf of the Estate of David Henson, the Complaint "demands judgment against the named Defendants, including any actual and/or apparent agents, independent contractors, servants and/or employees jointly and severally, for actual, general, special, and compensatory damages as a consequence of the negligence of the named Defendants . . ."[30]

### III. Applying Maryland's statute of limitations and West Virginia's substantive law to this medical malpractice case is consistent with Maryland's policy of deciding cases on their merits.

This Court "has a strong policy that cases be decided on their merits." *See Vogel v. Boddie-Noell Enters.* 2011 U.S. Dist. LEXIS 92374 (D. Md. August 17, 2011) (denial of a motion for default judgment. This policy extends to consideration of a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See Arrington v. Colleen, Inc.,* 2000 U.S. Dist. LEXIS 20651, 708 (D. Md. August 7, 2000) ("Motions to dismiss for failure to state a claim are 'granted sparingly and with caution in order to make certain that plaintiff is not improperly denied a right to have his claim adjudicated on the merits'" (internal citation omitted)). A decision that Maryland's three year statute of limitations applies to this case is consistent with that policy.

The facts of this case present a plausible claim for medical malpractice, and should be heard on the merits. Moreover, the Plaintiff has complied with the procedural

---

[29] Complaint ¶ 39.
[30] Complaint, p. 7.

requirements of both the MPLA and the HCMCA. Plaintiff gave Notice of this case within the statute of limitations under West Virginia's MPLA. She has provided not one, but two separate screening certificates of merit, one under the MPLA and one under Maryland's HCMCA. These

## CONCLUSION

The Defendants' Motion to Dismiss is premised on the mistaken assumption that this case is a wrongful death case. In fact, this is a medical malpractice case brought via a survival statute. Accordingly, this Court should apply the procedural law of Maryland and the substantive law of West Virginia. The three-year statute of limitation applies in this action; therefore, this Court should deny the Defendants' Motion.

Dated: February 28, 2020

Judy Anne Henson as Administratrix of
The Estate of David Wayne Henson

By counsel,

/s/ Stephen G. Skinner
Stephen G. Skinner
Bar ID: 20220
Client Funding #:1706090005
SKINNER LAW FIRM
PO BOX 487
Charles Town, WV 25414
304-725-7029
sskinner@skinnerfirm.com

**CERTIFICATE OF SERVICE**

      I hereby certify that on February 28, 2020, a copy of the foregoing **RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**, was filed and served via the CM/ECF system, to the following:

NATALIE C. MAGDEBURGER, BAR # 04647
ELLIOT D. PETTY, BAR #28042
PESSIN, KATZ LAW, P.A.
901 DULANEY VALLEY ROAD
SUITE 500
TOWSON, MARYLAND 21204

                                                     /s/ Stephen G. Skinner
                                                     Stephen G. Skinner